UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ELTON JACKSON,               )
               )
       Plaintiff,        )
               )
    vs.              )       Case No. 4:15-CV-01426 AGF
               )
RENTRO, et al.         )
               )
      Defendants.    )

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Bradley Rentfro,[1] Eric Herzog, Joel Hobbs, and Corey Uptegrove. ECF No. 94.  Defendants are corrections officers at the Missouri state prison where Plaintiff Elton Jackson is incarcerated.  Plaintiff filed this action under 42 U.S.C. § 1983 asserting that Defendants violated his constitutional rights by failing to protect him from an assault by another inmate.  For the reasons set forth below, the motion will be granted with respect to Defendants Rentfro, Herzog, and Hobbs, and the motion will be denied with respect to Defendant Uptegrove.

**BACKGROUND**

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff for purpose of the motion before the Court, the record establishes the following.

---

[1]    Plaintiff evidently misspelled Rentfro's name in the complaint.  Defendants' brief and the summary judgment record contain this revised spelling.

Plaintiff is an inmate in housing unit 2 at the Potosi Correctional Center.  Unit 2 houses inmates who are placed in administrative segregation ("ad seg") due to the threat they pose to the general population. Inmates in ad seg do not have cellmates, and their liberty within the prison is highly restricted. [2]

On the morning of September 13, 2014, Defendants Herzog, Hobbs, and Uptegrove were on duty and escorting inmates to get haircuts in a multi-use area of the prison called the sally port.  Defendant Rentfro was not on duty that day.  Two guards came to Plaintiff's cell, handcuffed his wrists behind his back, and escorted him to the sally port.  On arrival, the guards handcuffed Plaintiff to a bench while awaiting his turn with the barber, who was attending to another inmate, Quintshawn Jones.  When the barber finished with Jones, who was also handcuffed behind the back, Jones walked away unaccompanied and leaned against a nearby wall, slipped his hands out of his restraints, and attacked Plaintiff, first punching with fists, toppling Plaintiff to the floor face down with his hands still behind him cuffed to the bench, and then stomping on Plaintiff's head.  The summary judgment record contains video footage of the assault, albeit without audio.  Defendant Hobbs appears in the frame within three seconds of the first punch and is upon the inmates two seconds later, reaching for his pepper spray.  Defendant Herzog

---

[2]     The Missouri Department of Corrections Institutional Services Procedure Manual states under its definition of mandated single cell assignment that, "Assignment of an offender to a single cell within a [sic] administrative segregation unit for documented safety and security reasons, such as offenders who are considered an immediate or a long term danger to other offenders that would be celled with that offender, based on extremely violent, aggressive, threatening actions toward others, which may include murder/manslaughter, sexual assault/rape, assault with serious physical injury, sexually active HIV positive offender."  ECF No. 97-7.

appears two seconds behind Hobbs.  Hobbs sprayed Jones with pepper spray and, when

that proved ineffectual, tackled Jones to the ground and physically restrained him.

During the approximately nine seconds between Hobbs's spraying attempts and his

physical tackle, Jones stomped on Plaintiff's head eight times.  Plaintiff briefly lost

consciousness and suffered injuries requiring three days' hospitalization in St. Louis.

While the foregoing facts are undisputed, the parties' accounts vary as to what preceded

the assault.

The summary judgment record contains deposition testimony by the parties and

Jones.  According to Plaintiff, he and Jones had had an argument earlier that month.  ECF

No. 103-1 at 4.  On the morning of the assault, Defendants Uptegrove and Hobbs

retrieved Plaintiff from his cell to take him to get a haircut.  *Id*. at 6.  While he was

waiting on the bench, Jones assaulted him, and Plaintiff lost consciousness.

Jones, in his deposition, testified that corrections officers at the facility were aware

that he could slip out of handcuffs by dislocating his wrist, earning him the nickname

"Houdini."  ECF No. 97-1, p. 6, 7, 12.  Jones stated that Plaintiff owed him money, and

the situation escalated with "a lot of instigating from everybody."  *Id*. at 4-5.  On the

morning of the assault, Uptegrove and another officer (apparently Herzog) retrieved

Jones from his cell and handcuffed him, to be escorted to the sally port.  Jones testified:

> Uptegrove was like … here's your chance.  I'm like what are you talking
> about? He's like here's your chance. I'm like no. He says here's your
> chance. I'm like what are you talking about? He said you know what I'm
> talking about. They know my prior history. I know what he's talking about
> because they know. They always make jokes about it. They call me
> Houdini. So I knew what it was. So, anyway, I come out the cell, but that
> was -- I knew what he was insinuating and that was for me to slip my cuffs

and assault this dude. It was obvious that he's an inmate that nobody in
Potosi was too fond of.

ECF No. 103-5, p. 12.  Jones testified that his handcuffs were "extremely loose," "so

loose to the point where they basically fall off anyway."  *Id*. at 17.  Jones testified that the

two officers gave him a metaphorical high-five.  *Id*. at 15.

Defendant Uptegrove testified that he did not remember whether he was the

officer who handcuffed Jones that day.  ECF No. 103-4 at 11.  Defendant Herzog testified

that he had no experience with Jones prior to the assault and did not recall any concerns

among the officers that day.  ECF No. 97-2 at 6-7.  Herzog believed, but was not 100%

sure, that he was one of the officers who escorted Jones to the sally port that day (with

Uptegrove), and he was not sure whether he was the one to place Jones in handcuffs.  *Id*.

at 5, 13.  He denied ever intentionally placing handcuffs loosely on any inmate.  *Id*. at 13-

14.

Defendant Hobbs testified that he was not aware of any previous assaults by Jones.

Hobbs recounted as follows:

> I was walking through B Wing.  I seen Quinshawn Jones swing his fist.
> And I took off running, went in, giving him verbals the entire time I was
> running.  I seen that his arms were free. I tried to look and see if he had a
> weapon. His arms were flailing around. I pepper sprayed him. When he
> dropped his head, I tackled him.
> ***
> He had his arms unrestrained. And I didn't want to run into a shank, a knife,
> you know. I had to assess how I was going to deal with him.

ECF No. 97-3 at p. 7-8.  Hobbs further explained that Herzog came in behind him, so

Hobbs was unaware of Herzog's positioning.  *Id*. at 14.

4

Herzog was escorting another inmate when he heard a call over his radio indicating a fight in progress. *Id*. at 8. He left his charge and ran to the sally port to join Hobbs. Both officers issued verbal commands to Jones, and Herzog moved in to assist after Hobbs initiated the take-down. *Id*. at 9.

On September 16, 2015, Plaintiff filed a pro se prisoner civil rights complaint against Officers Rentfro, Herzog, Hobbs, and Uptegrove, alleging that they were deliberately indifferent in failing to prevent and promptly intervene in the assault, in violation of his rights under 42 U.S.C. § 1983. The case proceeded slowly due to delays in properly identifying and serving all Defendants and also due to multiple substitutions of appointed counsel.[3]

In his amended complaint, filed March 15, 2019, Plaintiff principally asserts that Defendants failed to monitor inmates in the sally port, failed to secure Jones's handcuffs, and failed to prevent and interrupt Jones's assault on Plaintiff, all amounting to deliberate indifference to Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment. ECF No. 72, ¶43.[4]

---

[3]     A Case Management Order issued June 4, 2018. ECF No. 56. Plaintiff filed an amended complaint on March 15, 2019. ECF No. 72. The Missouri Department of Corrections was added as a defendant and later dismissed. ECF No. 88. The parties attended a mediation conference on November 22, 2019 but were unable to resolve the matter. ECF No. 89.

[4]     The complaint also asserts that Defendants failed to employ adequate inventory procedures, alluding to evidence that Jones somehow acquired a handcuff key, which he had in his possession at the time of the assault. However, Jones testified that he did not use the key to free himself from his restraints before he assaulted Plaintiff because he "didn't need it." ECF No. 97-1 at 15. Plaintiff neither disputes this fact nor suggests in his brief that Jones's possession of the key is relevant to the present motion.

On April 20, 2020, Defendants filed the present motion for summary judgment asserting that the record lacks evidence creating a genuine factual dispute as to whether Defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff. ECF No. 94.  Defendants also assert that they are entitled to qualified immunity.  In response, Plaintiff contends that the record presents sufficient factual disputes to survive summary judgment and that Defendants are not entitled to qualified immunity because Plaintiff's Eighth Amendment right was well-established at the time of the assault.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be granted when, viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences, the record shows that there is no genuine issue of material fact. *Smith v. Kilgore*, 926 F.3d 479, 483 (8th Cir. 2019).  At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial.  *Id.*  There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*.

To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct.

6

*Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018).  Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).

**Failure to Protect**

"The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  A corrections official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.  *Curry*, 226 F.3d at 977.  A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk.  *Id.*  The subjective inquiry requires that the official was aware of facts from which the inference could be drawn that a substantial risk of harm existed, and he must also draw the inference.  *Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014).

Defendants do not dispute or even address whether the risk to Plaintiff was objectively substantial, but Eighth Circuit precedent recognizes that such a risk can be inferred from the mere fact that an inmate is segregated due to his violent nature and potential danger to others.  *See e.g., Newman v. Holmes*, 122 F.3d 650 (8th Cir. 1997) (reasoning that an inmate separated from the general population due to violent tendencies poses a substantial risk, if given the opportunity to free himself); *Walton v. Dawson*, 752

7

F.3d 1109 (8th Cir. 2014) (J. Gruender, concurring, noting that "the assailant's conduct can provide the court the most probative evidence of the degree and type of risk that [the inmate] faced."). The Department of Corrections manual governing ad seg reflects the level of precaution required with this population generally (ECF No. 97-7), and Defendant Hobbs confirmed in his deposition that the ad seg unit at Potosi is "an extremely rough area" such that inmates are not allowed out of their cells even for cleaning tasks due to "multiple assaults" ECF No. 103-3 at p. 5. Nothing in the record or the parties' filings belies their shared premise that, in the ad seg unit, there was a substantial risk of violence anytime an inmate was unrestrained. The Court therefore infers that there is no dispute as to this objective aspect of the inquiry.

Rather, Defendants argue that there is insufficient evidence that they were subjectively aware of any risk to Plaintiff before the attack. Defendants further contend that, once the attack began and they became aware of the danger to Plaintiff, they acted reasonably to intervene in the assault.

<u>Defendant Rentfro</u>

Plaintiff does not contest the fact that Defendant Rentfro was not on duty at the time of the incident, and no other facts in the record beyond the general nature of housing unit 2 would support a finding that Rentfro had any knowledge of a possible assault or any ability to prevent it. *See Williams v. Mueller*, 13 F.3d 1214 (8th Cir. 1994) (holding that the warden was not liable for an Eighth Amendment violation in which he had no involvement). As Plaintiff's responsive brief does not mention his claims against Rentfro, Plaintiff appears to have abandoned these claims. The Court will grant the

motion for summary judgment as to this Defendant.

<u>Defendants Hobbs and Herzog</u>

Plaintiff asserts that Defendants Hobbs and Herzog were or should have been aware of the risk of Jones's assault before it happened.  For an officer's indifference to rise to the level of an Eighth Amendment violation, however, he must *actually* know of the risk.  Whether the officer "should have known" is insufficient to establish mental state for the purposes of a failure to protect claim.  *See Walls*, 762 F.3d 778.  Plaintiff points to evidence generally depicting the volatile nature of housing unit 2 and suggests a lack of vigilance by officials leaving inmates unattended.  But there is no evidence in the record permitting an inference that either officer was in fact subjectively aware of any particular circumstances giving rise to the assault (e.g., that Jones was essentially unrestrained) and acted with deliberate indifference in failing to prevent it.

Once the attack began and Hobbs and Herzog became aware of the danger to Plaintiff, the question becomes whether they acted with deliberate indifference in failing to intervene more promptly before Plaintiff sustained additional blows to the head.  Video footage shows that Hobbs arrived within seconds after Jones first struck Plaintiff.  Herzog appeared right behind him.  Hobbs first attempted to stop Jones by using pepper spray and then physically tackled him nine seconds later.  Both officers testified that they issued verbal commands during that time, and Plaintiff does not dispute that fact.  Applicable precedent instructs that the officers' response was reasonable and does not give rise to a triable issue.  *See McCrary v. Baldwin*, 500 Fed.Appx. 551 (8th Cir. 2013) (holding that by ordering inmate "to get on the ground and cuff up indicates" that officer

9

"was trying to stop the altercation" and does not constitute deliberate indifference).
*Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989) (holding that "unarmed prison
officials have no duty *as a matter of law* to physically intervene in a prison fight which
may cause them serious injury or worsen the situation).  Because the facts surrounding
the officers' intervention are not in dispute and those facts do not give rise to a claim of
deliberate indifference under Eighth Circuit precedent, the Court will grant the motion for
summary judgment as to Defendants Hobbs and Herzog.

> Defendant Uptegrove

With respect to Defendant Uptegrove, however, the evidence in the summary
judgment record presents a triable fact as to whether Uptegrove was subjectively aware
of the risk Jones posed to Plaintiff.  Jones's deposition testimony, excerpted above,
suggests that Uptegrove not only knew of the risk but possibly created it by allegedly
telling Jones, "Here's your chance," which Jones understood as an invitation to go after
Plaintiff.  Though Defendants argue that Jones's claim is too implausible to stand on its
own and must be supported by more persuasive evidence (*Matsushita Elec. Indus. Co.,
Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (instructing that, where the factual
context renders the claim non-sensical, additional evidence is required to create a triable
issue)), the Court cannot say here that the factual context renders Plaintiff's claim
implausible.  Viewing the record in a light favorable to Plaintiff and mindful that matters
of credibility rest with the trier of fact, the Court finds that a reasonable juror could infer
from Jones's testimony that Uptegrove encouraged Jones to attack Plaintiff.  This record
precludes summary judgment in favor of this Defendant.

**Qualified Immunity**

"Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Wright v. U.S.*, 813 F.3d 689 (8th Cir. 2004).  An officer is entitled to qualified immunity "unless a reasonable official would have known that [his] actions constituted a deliberate, callous, or reckless disregard for [Plaintiff's] safety." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Taking the facts and all reasonable inferences in the light most beneficial to Plaintiff, Defendant Uptegrove's alleged actions would constitute a reckless disregard for Plaintiff's safety, thus falling outside the bounds of qualified immunity.  *See Walton*, 752 F.3d 1109 (denying qualified immunity for prison officials who were alleged to have left prison cells unlocked so that inmates could escape and cause each other harm).

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to Defendants Rentfro, Hobbs, and Herzog and **DENIED** with respect to Defendant Uptegrove.

**IT IS FURTHER ORDERED** that a conference call with counsel for the parties is set for **September 24, 2020**, at **3:00 p.m**., to discuss the trial date in this case.  Call information will be sent separately via email.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of September 2020.